JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7972 | **DATE** | 7/14/2004 |
| **CASE TITLE** | PARSONS TANNING CO. vs. JAMES L. SCHWARTZ, et al. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Defendants Michael and Lissa Weinstein and James L. Schwartz's motions for summary judgment [34-1, 38-1] are granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 1 5 2004 | 00 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | |
| | Copy to judge/magistrate judge. | CLERK | |
| CB | courtroom deputy's initials | 2004 JUL 14 PM 5: 07 | 7/14/2004 date mailed notice |
| | | Date/time received in central Clerk's Office | PW mailing deputy initials |

GMA
docketing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARSONS TANNING CO., a Delaware corporation, ex rel. CURTIS WEINSTEIN, | ) ) ) | No. 03 C 7972 |
| Plaintiff, | ) ) ) | Suzanne B. Conlon, Judge |
| v. | ) ) | |
| JAMES L. SCHWARTZ, MICHAEL WEINSTEIN and LISSA WEINSTEIN, | ) ) ) | |
| Defendants. | ) ) | |



## MEMORANDUM OPINION AND ORDER

This litigation arises out of complicated and acrimonious family disputes spanning the last decade. Curtis Weinstein ("Curtis") brought this derivative action against his brother and sister, Michael Weinstein ("Michael") and Lissa Weinstein ("Lissa") (collectively "Weinstein defendants") after a special shareholders meeting was noticed for the purpose of amending the bylaws of Parsons Tanning Company ("Parsons Tanning"), a family-run corporation owning an 88-acre farm in Lake Geneva, Wisconsin ("Upper Farm"). Curtis claims that the Weinstein defendants improperly seek to oust him from the Upper Farm leasehold by shareholder resolution, despite having lost their shares in Parson Tanning stock to Greiner Corporation International ("GCI"). Curtis seeks injunctive relief (Count I) and a declaratory judgment (Count II) regarding the identity of the rightful shareholders of Parsons Tanning stock. Curtis also sues attorney James L. Schwartz ("Schwartz") based on conflicts of interests in his legal representation of Michael, Lissa, Parsons Tanning, and GCI (Count III). The Weinstein defendants and Schwartz now move for summary judgment.

1

# BACKGROUND

## I.    Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Both the moving and non-moving parties are required to submit a statement of material facts, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). All facts not properly supported by the record evidence must be disregarded. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). In response to a motion for summary judgment, the non-moving party is required to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1 (b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993). "If additional material facts are submitted by the opposing party . . . , the moving party may submit a concise reply in the form prescribed in that section for a response." Local Rule 56.1 (a)(3)(B).

Curtis' submissions fail to comply with Local Rule 56.1. He fails to submit a statement of additional facts in the required form. Instead, he repeatedly refers to extraneous facts in his responses to the statement of facts submitted by Schwartz and the Weinstein defendants. Accordingly, Curtis' responses to ¶¶ 9, 10, 14 and 17-18 of the Weinstein defendants' statement of

facts and ¶¶ 8-12 of Schwartz's statement of facts will be disregarded to the extent additional, non-responsive facts are advanced. Local Rule 56.1(b)(3)(B).

Nor will the court consider Curtis' discussion of the background of the Aries Arabian Corporation bankruptcy in his response to ¶¶ 17-18 of the Weinstein defendants' statement of facts; only the monetary loan subsequently obtained by the Weinstein defendants from GCI for the purpose of settling the Carver Litigation is relevant to Curtis' claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (facts that are irrelevant or unnecessary to summary judgment motion will not be considered).

Finally, Curtis improperly relies on Schwartz's 1996 engagement letter and deposition testimony as evidence that Michael fraudulently conveyed his shares of Parsons Tanning stock to Lissa. In the 1996 engagement letter, Schwartz states "it is my understanding that Lissa Weinstein is a shareholder of Parsons Tanning Company and Michael Weinstein assigned his shares of stock in Parsons Tanning Company to Lissa Weinstein several years ago." Pl. Resp. Def. Facts at Ex. 33. At Schwartz's deposition, he attested that Michael was not a shareholder at the time of the 1996 shareholders meeting. Schwartz Dep. at 37. However, Curtis failed to establish foundation to show how Schwartz knew or understood that Michael transferred his shares to Lissa. Accordingly, the court cannot consider Schwartz's 1996 engagement letter and deposition testimony as evidence that Michael fraudulently conveyed his stock to Lissa. Fed. R. Evid. 602 ("[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). *See also Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence).

3

## II.    Facts

All facts are undisputed unless otherwise noted.  Michael, Lissa, Curtis, and Richey Weinstein are siblings.  Weinstein Facts at ¶ 5.  Herbert Weinstein, their deceased father, formed Parsons Tanning, a Delaware corporation, in 1964 for the purpose of engaging in the leather tannery business along with his brother Jerome and another business partner.  *Id.* at ¶¶ 1, 6.  Herbert also controlled another tannery, GCI.  *Id.* at ¶ 27.  Richey is now president of both Parsons Tanning and GCI.  *Id.* at ¶¶ 9, 28.  Schwartz is an Illinois attorney who has represented Parsons Tanning and the Weinstein defendants.  Schwartz Facts ¶¶ 8-12.

### A.    Parson Tanning Stock Ownership

Curtis' horse breeding business has leased the Upper Farm since 1990.  Weinstein Facts at ¶ 7, 10.  The current lease expires on March 31, 2005.  *Id.*  The parties dispute the propriety of a proposed Parsons Tanning shareholder resolution to approve the sale of the Upper Farm.  *Id.* at ¶¶ 20-22; Pl. Resp. Weinstein Facts at ¶¶ 20-22; Pl. Resp. Schwartz Facts at ¶ 5.  According to Curtis, the Weinstein defendants are not entitled to vote on the Upper Farm resolution because they are no longer stockholders.  Pl. Resp. Weinstein Facts at ¶¶ 21-22; Pl. Resp. Schwartz Facts at ¶¶ 6-7.

Parsons Tanning has 600 issued and outstanding shares of common stock.  Weinstein Facts at ¶ 12.  In 1990 or 1991, Parsons Tanning's stock was divided among the four Weinstein siblings in quarters, giving each 150 shares.  *Id.* at ¶ 14.[1]  Richey and Curtis each undisputedly retain

---

[1] During this litigation, the parties have offered a variety of arguments regarding the parties' ownership of Parsons Tanning stock.  Curtis' complaint, seeks a declaration that ownership is as follows: (1) Curtis – 160 shares; (2) Richey – 150 shares; and (3) GCI – 290 shares.  Complt. at ¶ 60.  Since then, the parties appear to have agreed that Curtis and Richey each own 150 shares, and the parties dispute only whether GCI acquired the remaining 300 shares from Lissa after Michael purportedly transferred his 150 shares to her in 1995.  Weinstein Facts at ¶¶ 15-19, 23-25, 27, 29-31.

4

ownership of 150 shares of Parsons Tanning stock. *Id.* at ¶¶ 15-16. According to Curtis, the Weinstein defendants no longer own the 150 shares of Parsons Tanning stock originally issued to them. Pl. Resp. Weinstein Facts at ¶¶ 17-19, 23-25, 27, 29-31. Instead, Curtis contends the Weinstein defendants experienced a series of financial setbacks that forced them to encumber their ownership interest in Parsons Tanning. *Id.* at ¶¶17-18, 27, 29-32. Specifically, Curtis contends Michael anticipated filing for bankruptcy in 1995 and shielded his 150 shares of Parsons Tanning stock from judgment creditors by fraudulently transferring that stock to Lissa. *Id.* Curtis contends Lissa pledged both her and Michael's fraudulently transferred stock as collateral to GCI in December 1996 in exchange for a loan to enable her and Michael's payment of a legal settlement in an unrelated California lawsuit ("Carver litigation"). *Id.* at ¶¶ 17, 29-30, and Ex. 13. In support of his position, Curtis tenders a note signed by Lissa in which she agreed "to put my Parsons Tanning Company stock aside as collateral for a $100,000.00 loan made to me." *Id.* at ¶ 27, Ex. 13. The Weinstein defendants admit they are indebted to GCI, but dispute that Lissa ever pledged Parsons Tanning stock as collateral. Weinstein Reply at ¶ 17. In addition to Lissa's note, Curtis relies on a later agreement executed by Michael and Richey purportedly governing Michael and Lissa's repayment of multiple GCI loans, including the December 1996 loan. Pl. Resp. Weinstein Facts at ¶ 27. The agreement specified, *inter alia*, that

> [t]he $100,000 loaned to Lissa & Michael Weinstein in December of 1996 for payment of the California judgment will be secured with Parson stock. A $4,000 payment will be made on or before July 15, 1997 for interest accumulated on this loan through June 30, 1997. GCI will continue to make this loan available to Michael & Lissa provided that they are negotiating with Richey and/or Curtis Weinstein for the sale of Michael & Lissa Weinstein's interest in the "Upper Farm," or a minimum of October 1, 1997. If after this time, GCI decides to call in the note they must give written notice and 45 days from the date of notice to pay the $100,000

loan. This note will bear interest at 8% and payments will be made quarterly with the
first payment due on September 30, 1997 of $2,000.00.

*Id.* at ¶ 27, Ex. 30. Curtis contends the Weinstein defendants defaulted on this loan, causing the

Weinstein defendants to forfeit their stock to GCI. *Id.* at ¶¶ 17, 30; Ex. 21, 27.

According to the Weinstein defendants, Michael never conveyed his shares to Lissa, they

never agreed to pledge their shares as collateral in exchange for the GCI loan, and they still each own

150 shares. Weinstein Facts at ¶¶ 17-19, 23, 29-30; Ex. 1, ¶ 5; Ex. 2 ¶ 5. Instead, Michael contends

that he and Lissa had an informal understanding that she would control his shares in early 1995, but

that he thereafter reclaimed control in January 1996. *Id.* at Ex. 1, ¶ 7. The Weinstein defendants

further challenge Curtis' evidence that they gave their Parsons Tanning stock as collateral to GCI.

Weinstein Reply at ¶ 17. According to the Weinstein defendants, the agreement executed by

Michael and Richey was merely a discussion draft, not a final contract executed by all parties

including Lissa. Weinstein Facts at Ex. 1, ¶ 12-13; Ex. 3, ¶ 14.

Despite differing positions on whether Michael transferred his stock to Lissa and whether the

Weinstein defendants actually pledged their Parsons Tanning stock as collateral for the GCI loan,

it is undisputed that GCI did not follow through with legal proceedings against the Weinstein

defendants after the default. Weinstein Facts at ¶¶ 31, 33. Although GCI sent the Weinstein

defendants an initial notice of default in 2000 and Lissa a subsequent notice of collateral sale in

2001, it is undisputed that the sale never occurred. *Id.* at ¶¶ 17, 33; Ex. 21; Ex. 27; Pl. Resp.

Weinstein Facts at ¶ 33.

**B.      Schwartz's Legal Representation**

Over the last decade, Schwartz has provided legal representation to the Weinstein defendants and Parsons Tanning; Schwartz has never represented GCI. Schwartz Facts ¶¶ 8-13. As to the Weinstein defendants, Schwartz has represented Michael in multiple matters since 1994. *Id.* at ¶ 10. In the mid-1990s, Schwartz counseled Michael on asset protection and was retained as special counsel for various bankruptcy proceedings. *Id.* at 11; Pl. Resp. Schwartz Facts at ¶ 11. When the Carver litigation settled in 1996, Schwartz represented the Weinstein defendants in the negotiation of GCI loans for payment of the settlement. Pl. Resp. Schwartz Facts at ¶ 12; Schwartz Reply at ¶ 15-16. In 2001, Schwartz represented the Weinstein defendants in the GCI loan dispute. Schwartz Facts at ¶ 12. Finally, in the fall of 2003, Schwartz represented Michael in an unrelated real estate sale. *Id.* at ¶ 10; Schwartz Reply at ¶ 12.

Schwartz's legal representation of Parsons Tanning has been more limited. *Id.* at ¶ 8. In August 1995, Schwartz was retained as counsel to Parsons Tanning in connection with its annual shareholder meeting. *Id.* After that meeting, Schwartz performed no other legal services for Parsons Tanning until August 2003. *Id.* at ¶ 9. In August, Richey retained Schwartz to aid in the organization and operation of the special Parsons Tanning shareholders meeting noticed to amend the corporate by-laws. *Id.* In September, Schwartz also corresponded with a real estate broker on behalf of Parsons Tanning regarding the proposed sale of the Upper Farm. Pl. Resp. Schwartz Facts at ¶ 9.

## DISCUSSION

### I.      Legal Standard

A movant is entitled to summary judgment when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Dyrek v. Garvey*, 334 F.3d 590, 597-98 (7th Cir. 2003); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Entry of summary judgment against a party is proper when the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dyrek*, 334 F.3d at 597-98; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. To survive a motion for summary judgment, the nonmovant must do more than merely demonstrate a factual dispute; he must offer evidence sufficient to support a verdict in his favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986).

### II.     Declaratory Judgment and Injunctive Relief (Counts I and II)

Curtis seeks a declaratory judgment regarding the identity of the rightful Parsons Tanning stockholders. Specifically, he seeks a declaration that the rightful stockholders are as follows: (1) Curtis Weinstein – 150 shares; (2) Richey Weinstein — 150 shares; and (3) GCI – 300 shares. Curtis requests the Weinstein defendants be permanently enjoined from participating in any special or annual shareholders meeting because they do not own any stock. Curtis predicates his claims

8

solely on GCI's acquisition of the Weinstein defendants' stock by collateral sale. Compl., Curtis Aff. at ¶ 26.[2] The Weinstein defendants claim Curtis cannot prove GCI acquired their stock.

Curtis contends Michael fraudulently transferred his stock to Lissa in 1995, Lissa subsequently pledged both her and Michael's stock to GCI as collateral in exchange for a loan in 1996, and Michael and Lissa defaulted on the loan. Preliminarily, the Weinstein defendants claim Curtis lacks competent evidence that Michael conveyed his stock to Lissa in 1995. The Weinstein defendants argue that absent a writing, Curtis cannot prove Michael conveyed his stock to Lisa. Weinstein Mot. at 4. The Weinstein defendants are mistaken. According to Delaware's General Corporation Law, the Delaware Uniform Commercial Code ("UCC") governs the transfer of corporate stock. 8 Del. C. § 159; ("shares of stock in every corporation shall be deemed personal property and transferable as provided in Article 8 of subtitle I of Title 6"); 8 Del. C § 201 ("the transfer of stock and the certificates of stock which represent the stock or uncertificated stock shall be governed by Article 8 of subtitle I of Title 6"); *Kallop v. McAllister*, 678 A.2d 526 (Del. 1996). According to the Delaware UCC, a writing is not necessary to transfer stock. 6 Del. C. § 8-113 ("A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making"). Thus, Curtis may demonstrate an issue of fact as to whether Michael fraudulently

---

[2]Curtis attested that "[o]n or about April 28, 2000, I received a notice from Joel D. Teibloom transmitting to me a notice of private sale which was to be made pursuant to the Uniform Commerical Code from and after January 31, 2001. As a result of that notice and the provisions of the Uniform Commercial Code, the Parsons shares that had been previously owned by Lissa and Michael Weinstein became the property of GCI and settled and compromised and extinguished the $100,000 indebtedness owed to GCI by the aforesaid Lissa and Michael Weinstein." Curtis Aff. at ¶ 26.

transferred his shares of Parsons Tanning stock to Lissa even in the absence of evidence of a written agreement between them.

Curtis' reliance on a schedule filed by Michael during his 1996 Northern District of Illinois bankruptcy proceeding in which Michael omitted any ownership interest in Parsons and the Upper Farm sufficiently creates an issue of fact as to whether he had transferred his Parsons Tanning stock. Pl. Resp. Weinstein Facts at ¶ 18, Ex. 40. Michael signed the schedule declaring, "under penalty of perjury that [he] read the foregoing . . . schedules, consisting of 23 sheets, and that they are true and correct to the best of [his] knowledge, information, and belief." *Id.* Although Michael protests that he never conveyed his Parsons Tanning stock to Lissa, he admits they had an informal agreement whereby she would "control" them for him. Weinstein Facts, Ex. 1 at ¶ 7. Michael admits he requested his ownership interest in Parsons Tanning stock be purposefully omitted from corporate governance records due to the pursuit of judgment creditors. *Id.* Based on this evidence, a reasonable factfinder could conclude that Michael had fraudulently transferred his stock to Lissa in order to shield the stock from judgment creditors. Nor is Michael's protestation that his bankruptcy attorney committed malpractice and erred in completing the forms persuasive. Michael swore he read the schedules and that they were true and correct. Pl. Resp. Weinstein Facts at ¶ 18, Ex. 40.

However, whether Michael fraudulently transferred his stock to Lissa in 1995 ultimately is of no consequence. Even if a reasonable factfinder found that Michael fraudulently transferred his stock to Lissa, Curtis' claim would still fail because he has not proven GCI owns either of the Weinstein defendants' stock. Curtis advances no evidence that substantiates his allegation that GCI enforced its right to the Weinstein defendants' stock by collateral sale. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999) (non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial). Curtis simply concedes that GCI failed to complete

10

the sale of the Weinstein defendants' stock. Pl. Resp. Weinstein Facts at ¶ 33. *See also* Pl. Opp. Mem. at 14 ("Unbeknownst to Curtis, it appears that Richey told Teibloom not to effectuate the sale"); Id. at 20-21 ("Nevertheless, a sale did not occur. . . [Lissa] realized a massive benefit, immediately defaulted, and now gleefully embraces Richey's failure to actually effectuate the sale as a life preserver for her duplicity"). Nor does Curtis mention, let alone proffer any evidence, that GCI pursued a UCC remedy other than collateral sale. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999) (summary judgment is the time for the plaintiff to "put up or shut up"). Absent any evidence GCI acquired the Weinstein defendants' stock by collateral sale, Curtis' claim fails as a matter of law and the Weinstein defendants retain their voting rights under Delaware's General Corporation Law. 8 Del. C. § 217 ("Persons whose stock is pledged shall be entitled to vote").

Curtis' invocation of the doctrine of unclean hands cannot change this result. While it certainly appears the Weinstein defendants' enjoyed a windfall, neither seek equitable relief from this court. *Truserv Corp. v. Chaska Building Center, Inc.*, No. 02 C 1018, 2003 WL 924509 at * 21 (N.D. Ill. March 6, 2003) ("[t]he equitable doctrine of unclean hands provides that a party seeking equitable relief cannot take advantage of his own wrong") (internal quotation and citation omitted). Curtis' real dispute is with GCI and Richey's failure to proceed against the Weinstein defendants after they defaulted. Accordingly, summary judgment must be granted as to Counts I and II.[3]

---

[3]On reply, the Weinstein defendants newly argued – in hypertechnical terms – that Lissa's note and Michael and Richey's agreement did not suffice to create a security interest under the Illinois UCC. Weinstein Reply at 5-8. This improper argument was not considered; Curtis has not had the opportunity to respond. *See In re Systems Software Associates, Inc. Securities Litigation*, No. 97 C 177, 1998 WL 673831 (N.D. Ill. Sept. 23, 1998). The court assumes, without deciding, that GCI has a valid security interest in the Weinstein defendants' Parsons Tanning stock.

## III. Conflict of Interest (Count III)

Curtis' complaint alleged that Schwartz's representation of Michael, Lissa, Parsons Tanning, and GCI at various times constitutes a conflict of interest. Curtis primarily relies on Schwartz's failure to advise the bankruptcy court of Michael's interest in Parsons Tanning and to properly prepare loan documentation obligating the Weinstein defendants' repayment of GCI loans in 1996. Compl. at ¶¶ 36, 38-41, 67, 70, 73. However, as Curtis now concedes, Schwartz never represented GCI. Pl. Resp. Schwartz Facts at ¶ 13. Curtis cannot substantiate an actionable conflict of interest based on duties to GCI. *Schwartz v. Cortelloni, et al.*, 685 N.E.2d 871, 875 (Ill. 1997) (attorney only owes duty to actual client).

The remainder of Curtis' claim of conflict of interest involves Schwartz's representation of both Parsons Tanning and the Weinstein defendants. At the outset, Curtis argues Schwartz never obtained a proper waiver of any conflict between Parsons Tanning and the Weinstein defendants in 1996. Pl. Opp. Mem. at 21. However, Curtis' supporting evidence fails to comply with the explicit language of Rule 56.1(b)(3)(B). See Pl. Resp. Schwartz Facts at ¶ 8. Curtis cannot oppose summary judgment by submitting extraneous, non-responsive information in response to Schwartz's statement of facts. Nor is Curtis' supporting evidence relevant because he and the other shareholders subsequently ratified the retention of Schwartz as counsel to Parsons Tanning for the 1996 shareholders meeting. Schwartz Response at Ex. B. On January 17, 1996, Curtis and the other shareholders signed a Consent of Directors of Parsons Tanning Inc., resolving "that all of the acts and deeds of the officers of the Company on or prior to the date of this meeting during this past year be and said acts and deeds are ratified and approved." *Id.*

Moreover, Schwartz's representation of Parsons Tanning is not related to his representation of the Weinstein defendants. Contrary to Curtis' position, Parsons Tanning had no interest in

12

Michael's 1996 bankruptcy proceedings or the Carver litigation. *Schwartz*, 685 N.E.2d at 878 (substantial relationship must exist between two representations for conflict warranting disqualification to exist). Parsons was not one of Michael's creditors. Nor did Parsons lend Michael any funds to settle the Carver litigation. Curtis mistakes GCI's interest in the Weinstein defendants' affairs with that of Parsons Tanning. Nor can Curtis establish a conflict of interest between Schwartz's past representation of the Weinstein defendants and his representation of Parsons Tanning in 2003. Curtis fails to submit evidence to substantiate his claim that GCI now owns the Weinstein defendants' Parsons Tanning stock. Thus, there is no support for Curtis' claim that Schwartz assisted the Weinstein defendants in exerting improper control over Parsons Tanning. Rather, the record firmly establishes that Schwartz was retained by Richey in 2003 on behalf of Parsons Tanning for the purpose of dealing with the prospective sale of the Upper Farm – a sale supported by the majority of Parsons Tanning shareholders. *Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1995) (corporate attorney does not owe his duty to any individual shareholder, but to corporate entity). Summary judgment must be granted on Count III.

## CONCLUSION

There are no disputed issues of material fact. Defendants are entitled to summary judgment on all claims as a matter of law.

July 14, 2004

ENTER:

Suzanne B. Conlon
United States District Judge

13